UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JASON CURTIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 07-196-P-S |
| | ) | |
| SULLIVAN TIRE, INC., | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this employment action alleging a hostile work environment and unlawful retaliation that was removed from the Maine Superior Court (York County), the defendant, Sullivan Tire, Inc., moves for summary judgment. I recommend that the court grant the motion in part.

### I. Summary Judgment Standards

#### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B. Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record

citation. *See id.* The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id.*

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II. Factual Background

The statements of material facts submitted by the parties pursuant to Local Rule 56 include the following undisputed material facts.

The defendant hired the plaintiff as an automotive technician in its Biddeford, Maine location in May 2005. Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ("Defendant's SMF") (Docket No. 16) ¶1; Plaintiff's Opposition to

Defendant's Separate Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 21) ¶ 1. His job duties included performing alignments, oil changes, preventive maintenance, tires, and some sales. *Id*. ¶ 2. At the time the plaintiff was hired, Stephen Kitchen was the manager of the Biddeford shop. *Id*. ¶ 3. In January 2006, the plaintiff was transferred to the defendant's Portland store. *Id*. ¶ 4. In July 2006, the plaintiff was transferred back to the Biddeford store. *Id*. ¶ 6. His duties were the same at both locations. *Id*. ¶ 7. David Dow was the manager of the Biddeford store when the plaintiff was transferred back in July 2006. *Id*. ¶ 8.

The assistant manager of the Biddeford store was Keith Shirley. *Id*. ¶ 9. He did not have the authority to hire or fire employees. *Id*. ¶ 11. Jody David was the shop foreman or production manager at the time the plaintiff was transferred back to Biddeford. *Id*. ¶ 13. He too did not have the authority to hire or fire employees. *Id*. ¶ 15. Wayne Funder was, during the relevant time frame, the defendant's human resources manager. *Id*. ¶ 16. Billy Sullivan was, during the same time frame, the defendant's district manager for Maine. *Id*. ¶ 17.

In the time the plaintiff worked with Shirley, between July and December 2006, the plaintiff spent about 90% of each work day in the bays. *Id*. ¶ 19. The door between the showroom and the workshop bays was closed approximately 50% of the time. *Id*. ¶ 18. The only time the plaintiff would go into the showroom would be at the end of the day when he clocked out and to take a repair order to the desk. *Id*. ¶ 20. He delivered approximately 8 repair orders a day to the showroom. *Id*. ¶ 21. Shirley spent approximately 80% of his working time at the service desk in the showroom. *Id*. ¶ 23.

"Garage talk" was common in the Biddeford shop. *Id*. ¶ 27. The plaintiff defined "garage talk" as having a "bad mouth," "the F bomb, . . . and all the swears." *Id*. ¶ 28. There was a certain level of joking between employees in the Biddeford store, and the plaintiff teased

4

his coworkers. *Id*. ¶¶ 29-30. The plaintiff and other Biddeford employees, including Shirley and David, would use the expression "L.O.F.," which stands for "Look Out Front." *Id*. ¶ 31. This expression was used to get everyone's attention when there was a woman on the street outside or in the office. *Id*. ¶ 31. The plaintiff was not offended by the use of this expression. *Id*. ¶ 35.

Shirley never propositioned the plaintiff for sexual activity. *Id*. ¶ 36. The plaintiff never felt physically threatened by Shirley. *Id*. ¶ 41. Approximately two months after his transfer back to Biddeford, the plaintiff began keeping notes of things said by Shirley that the plaintiff did not like hearing. *Id*. ¶ 49. Shirley thought the things he said were joking, but the plaintiff did not. *Id*. ¶ 50. In September 2006, Shirley started making comments to the plaintiff about the way the plaintiff's girlfriend looked. *Id*. ¶ 51. He said something once about the plaintiff's girlfriend's "rack," referring to her breasts. Plaintiff's Sep[a]rate Statement of Facts ("Plaintiff's SMF") (Docket No. 22) ¶ 21; Defendant's Objections to Plaintiff's Opposition to Defendant's Separate Statement of Material Facts ("Defendant's Responsive SMF") (Docket No. 24) ¶ 21. Shirley's comments occurred when the plaintiff's girlfriend would come into the shop to see him. Defendant's SMF ¶ 52; Plaintiff's Responsive SMF ¶ 52. The plaintiff's girlfriend stopped coming into the shop in October because the plaintiff told her about Shirley's comments, and she was uncomfortable. *Id*. ¶ 54. The plaintiff told Shirley to stop, as he did not want to hear comments about his girlfriend, and to show a little bit more respect. Plaintiff's SMF ¶ 29; Defendant's Responsive SMF ¶ 29. Shirley stopped making the comments when the plaintiff's girlfriend stopped coming into the shop. Defendant's SMF ¶ 55; Plaintiff's Responsive SMF ¶ 55.

At least once, Shirley made a comment about his sexual relations with his own wife. *Id*. ¶ 60. If an attractive woman came into the shop, Shirley would sometimes say to the plaintiff,

"Would you?" – meaning would the plaintiff have sexual relations with the woman. *Id*. ¶ 61. Shirley would say this to the plaintiff in the presence of other employees. *Id*. ¶ 62. The plaintiff estimates that Shirley made this comment to him no more than seven times. *Id*. ¶ 63. Shirley never made sexual comments directly to female customers. Plaintiff's SMF ¶ 24; Defendant's Responsive SMF ¶ 24.

Shirley would sometimes swing repair orders at technicians. Defendant's SMF ¶ 64; Plaintiff's Responsive SMF ¶ 64. A repair order is a plastic sleeve with one or more pieces of paper or tags in it. *Id*. ¶ 65. On one occasion, Shirley hit the plaintiff in the groin with a repair order. *Id*. ¶ 66. On one occasion, the plaintiff heard Shirley call David a "gay pirate." *Id*. ¶ 67. David is bald with a mustache and a gold hoop earring. *Id*. ¶ 68. On one occasion, in November 2006, Shirley recommended to the plaintiff that the plaintiff "christen" his new house by having sex with his girlfriend in every room. *Id*. ¶¶ 70-71.

Dow held a meeting with his employees in September or October 2006 to discuss certain behavior between the employees. *Id*. ¶¶ 72-73. At the meeting, Dow told everyone that the joking with each other was over, that they were not to talk about each other's girlfriends, that there was to be no more sex talk and that the employees needed to come to work and do their jobs. *Id*. ¶ 74. On November 18, 2006, the plaintiff brought a vehicle into the shop for a diagnosis. Plaintiff's SMF ¶ 36; Defendant's Responsive SMF ¶ 36. Shirley came over and told the plaintiff to put a battery into it. *Id*. The plaintiff responded that a battery had been put in, and they now needed to diagnose the issue. *Id*. Shirley became angry at the plaintiff, and the plaintiff responded in the same manner. *Id*. Shirley then swore at the plaintiff, and the plaintiff told him to get his "fat ass" back into the office. *Id*. Shirley told the plaintiff to go home for the day. *Id*. ¶ 37. On November 20, 2006, the plaintiff reported Shirley's behavior to Dow after the

plaintiff was presented with a written warning for insubordination toward Shirley. Defendant's SMF ¶ 77; Plaintiff's Responsive SMF ¶ 77. On December 20, 2006, the plaintiff told Dow that he was upset and unhappy because the sexual comments by Shirley had not stopped. *Id.* ¶¶ 79, 81.

The plaintiff's first performance review took place on October 19, 2006. *Id.* ¶ 85. This review was performed by Dow and included a self-review dated September 28, 2006. *Id.* ¶¶ 86-87. Dow rated the plaintiff 2 out of a possible 5 in the category of "Teamwork and Cooperation." *Id.* ¶ 88. He recommended that the plaintiff receive training on attitude in the workplace. *Id.* ¶ 91. The plaintiff admitted that he needed training in conflict management. *Id.* ¶ 92. He admits swearing at Shirley. *Id.* ¶ 99. Some time in August 2006, Dow issued the plaintiff a verbal warning for losing his temper. *Id.* ¶ 100.[1] The plaintiff received a written warning related to the incident that occurred on November 18, 2006. *Id.* ¶ 103. On that day, Shirley sent the plaintiff home without pay for insubordination. *Id.* ¶ 105. The written warning made clear that if the plaintiff's "bad attitude and talking back continue, more severe measures will be implemented." *Id.* ¶ 109.

On December 20, 2006, the plaintiff and Dow had a confrontation, and he clocked out at 2:45 p.m., and went home a few minutes after Dow told him to leave. *Id.* ¶¶ 112, 114. When the plaintiff came back for his next scheduled shift on or about December 21 or 22, Dow terminated the plaintiff's employment. *Id.* ¶ 116. The plaintiff and Dow did not speak between the time when Dow told the plaintiff to go home and when Dow terminated the plaintiff's employment. *Id.* ¶ 117. Dow was the sole decision-maker with respect to the termination. *Id.* ¶ 118.

---

[1] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 100, but the authority he cites in support of his denial does not support it. Because the paragraph is supported by the citation given by the defendant, it is deemed admitted.

On December 20, 2006, the plaintiff called Sullivan's telephone number. *Id.* ¶ 122. He got the number from David. *Id.* ¶ 123. He had never tried to call Sullivan before, and it was the only time he called Sullivan. *Id.* ¶¶ 125, 127. He did not speak to Sullivan, nor did he communicate any details or information regarding his problems in a message for Sullivan. *Id.* ¶ 126.[2] The plaintiff attempted to call Funder on December 20, 2006 and left a message asking him to return the call. *Id.* ¶ 129.[3] He spoke to Funder on December 26, 2006 to try to get his job back. *Id.* ¶¶ 130-31. Sullivan did not learn that the plaintiff had any complaints about Shirley and Sullivan Tire until he saw a copy of the plaintiff's Maine Human Rights Commission charge. *Id.* ¶ 136.[4]

### III. Discussion

#### A. Count I

The defendant contends that the defendant cannot establish a *prima facie* case of a hostile work environment based on sexual harassment because he cannot show that any of the harassment of which he complains constituted discrimination because of his sex. Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Motion") (Docket No. 15) at 5-7. The Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551, *et seq.*, the only basis

---

[2] The plaintiff purports to qualify this paragraph of the defendant's statement of material facts with, in part, the statement that "Curtis testified that he left Sullivan a message in which he said [he] referred to 'same – the comments that I – all my problems.'" Plaintiff's Responsive SMF ¶ 126. However, the sole citation to the summary judgment record given in support of that paragraph of the plaintiff's responsive statement of material facts does not support this factual assertion, which accordingly is disregarded.

[3] This paragraph of the defendant's statement of material facts says: "The first time Curtis attempted to call Wayne Funder was after Curtis was terminated." Defendant's SMF ¶ 129. The plaintiff denies this paragraph, and the page of the plaintiff's deposition cited by both the defendant in support of its statement and the plaintiff in his denial makes clear that the plaintiff testified that the first time he tried to call Funder was on December 20, which he "believe[d]," incorrectly, was the day he was terminated. Deposition of Jason Curtis ("Plaintiff's Dep.") (Docket No. 10) at 155. The parties agree that the plaintiff was terminated on December 21 or 22, 2006. Defendant's SMF ¶ 116; Plaintiff's Responsive SMF ¶ 116.

[4] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the denial is unsupported by any citation to the summary judgment record. Plaintiff's Responsive SMF ¶ 136. Because it is supported by the citation given to the summary judgment record, this paragraph of the defendant's statement of material facts is therefore deemed admitted.

alleged for Count I of the complaint, Plaintiff's Complaint for a Hostile Work Environment ("Complaint") (Exh. B to Notice of Removal (Docket No. 1)), generally tracks the federal anti-discrimination statutes, making it appropriate to look to federal precedent for guidance in interpreting the state statute. *Doyle v. Department of Human Servs.*, 2003 ME 61, ¶ 14 n.7, 824 A.2d 48, 54 n.7.

> To state a claim for sexual discrimination based on a hostile work environment . . ., [a plaintiff] must show: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Foss v. Circuit City Stores, Inc.*, 521 F.Supp.2d 99, 108 (D. Me. 2007) (citation omitted).

This case also presents a same-sex harassment claim, that is, the plaintiff and the alleged harasser are both male. In such cases, there are

> three evidentiary paths by which a same-sex plaintiff can show that the conduct was based on sex or because of sex. First, a plaintiff can show that the conduct was motivated by sexual desire. Second, a plaintiff can show that the harasser was motivated by a general hostility to the presence of the same gender in the workplace. And third, a plaintiff may offer direct comparative evidence about how the harasser treated both males and females in a mixed-sex workplace.

*Id.* (citations omitted).

Here, the defendant argues that the plaintiff cannot show that he was subjected to any harassment because of, or based upon, his sex. Motion at 5-6. The plaintiff relies on the third option with respect to this claim. He asserts that

> the evidence unequivocally establishes that Shirley treated men differently than women. Specifically, [the plaintiff] and Shirley both testified [that] Shirley only subjected men to his offensive sexual

9

> comments. PSMF 9, 24. Such highly relevant evidence allows a juror[5] to reasonably infer that Curtis and other male employees were treated differently.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 20) at 10. The flaw in the plaintiff's argument, however, is that there were no females in his workplace. Defendant's SMF ¶ 39.[6] The paragraphs of his statement of material facts cited in the quoted language (Plaintiff's SMF ¶¶ 9, 24) establish only that Shirley did not make the remarks at issue to female customers. The case law refers to "a mixed-sex workplace" as the setting for the means chosen by the plaintiff to prove that the alleged harassment was because of his sex. While the listed evidentiary paths are not exclusive, *see Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999), this is the path that the plaintiff has chosen, and, in any event, he must always prove that the conduct at issue constituted harassment because of his sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). The evidence that the plaintiff proffers here does not do that. *See generally Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006).

Because the plaintiff has failed to offer evidence that would allow a reasonable factfinder to conclude that the conduct of which he complains occurred because of his sex, I do not reach the defendant's other arguments with respect to the hostile work environment claim. The defendant is entitled to summary judgment on Count I.

### B. Count II

The MHRA provides, in relevant part:

> It is unlawful employment discrimination, in violation of this Act . . .

---

[5] The plaintiff has not requested a jury trial in this case.
[6] The plaintiff denies paragraph 39 of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 39, but the denial does not address the portion of that paragraph that is stated above. That assertion is supported by the portion of the summary judgment record cited by the defendant, and accordingly is deemed admitted.

> **E.** For an employer . . . to discriminate in any manner against individuals because they have opposed a practice that would be a violation of this Act or because they have made a charge, testified or assisted in an investigation, proceeding or hearing under this Act.

5 M.R.S.A. § 4572(1). The parties agree that the plaintiff cannot offer direct evidence of unlawful retaliation, and they both rely on the *McDonnell Douglas* burden-shifting framework for proof of this claim. Motion at 13; Opposition at 13-19. This framework has been adopted for cases brought under the MHRA. *Maine Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261-63 (Me. 1979). Specifically, the construct provides that a plaintiff must first establish a *prima facie* case of retaliation, by showing that

> (1) [he] engaged in a protected activity, (2) [his] employer thereafter subjected [him] to adverse employment action, and (3) a causal link existed between the two events.

*Bowen v. Department of Human Servs.*, 606 A.2d 1051, 1054 (Me. 1992). If the plaintiff successfully makes this showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. *Foss*, 521 F.Supp.2d at 110. If the defendant does so, the burden reverts to the plaintiff to show that the defendant's reason for its action was merely a pretext for discrimination. *Id*.

Here, the defendant contends that the plaintiff cannot establish the first and third elements of his *prima facie* case. Motion at 14-20. "A protected activity is broadly defined as conduct by [the plaintiff] that is in opposition to an unlawful employment practice of the defendant." *Bowen*, 606 A.2d at 1054. The plaintiff need show only that he had a reasonable belief that the conduct complained of amounted to an unlawful employment practice under the MHRA, and need not prevail on his underlying claim. *Id*.

On this point, the defendant argues that the plaintiff could not have reasonably believed that Shirley's conduct was directed at him because of his sex, because the Maine Law Court held

in *Bowen* under a similar factual scenario that "the mere use of vulgar sexual comments in the work place was insufficient as a matter of law to create any inference that the treatment was occasioned by plaintiff's gender." Motion at 15 (citation and internal punctuation omitted). However, that characterization of the *Bowen* facts is too narrowly drawn. In that case, the vulgar language at issue was directed at both male and female employees, making it unlikely that it was directed at the plaintiff because she was a woman. 606 A.2d at 1054. Other employees, in addition to the accused female supervisor, made sexually suggestive or offensive remarks during a "stress relief session," which were not directed particularly at the plaintiff. *Id*. Contrary to the defendant's assertion, Reply at 5, this is not a "distinction [that] makes no difference." The plaintiff has offered evidence that Shirley would not make the remarks that the plaintiff found offensive or undertake the allegedly offensive behavior when female customers were present. The proper question is whether that fact, viewed in the light most favorable to the plaintiff, is sufficient to allow a reasonable factfinder to conclude that the plaintiff's belief, although incorrect, was reasonable under the circumstances.

In *Foss*, Chief Judge Singal held that a defendant employer was entitled to summary judgment on a male employee's claim of a hostile work environment caused by sexual harassment, but not on a claim of unlawful retaliation, when the plaintiff offered evidence that: 1) on 19 days over a period of six weeks, his supervisor constantly made sexual comments about female customers; 2) his supervisor made jokes to the plaintiff about obese women; 3) his supervisor would talk about his desire to be single whenever an attractive woman walked into the plaintiff's department; 4) his supervisor often described his sexual habits and experiences to the plaintiff; 5) his supervisor made inappropriate comments to other employees about a woman he thought was the plaintiff's girlfriend; 6) his supervisor made sexually explicit comments to the

plaintiff about a woman they both knew; and 7) his supervisor made an offensive comment to the plaintiff after seeing a picture of the plaintiff's girlfriend. 521 F.Supp.2d at 103-04. The supervisor also made offensive comments in the presence of a female employee, although not directed to her. *Id*. at 104. While the evidence here does not establish that Shirley made sexually-based comments to the plaintiff "every time they worked together," as in *Foss, id*. at 111, the plaintiff has offered enough to allow a reasonable factfinder to conclude that he did reasonably believe that he was being harassed because of his gender.

The defendant next argues that the plaintiff's belief could not have been reasonable "because nearly all of the offensive conduct cited by [the plaintiff] ended before he made his first complaint to Dow." Motion at 15 (emphasis in original). It then lists four incidents that occurred before Dow held a meeting to tell all employees "to stop joking and teasing each other" and three or more that occurred thereafter. *Id*. The defendant does not identify when it contends the defendant "made his first complaint to Dow." The plaintiff responds that he offers evidence that "the conduct did not stop after November of 2006," citing paragraphs 44-67 of his statement of material facts. Opposition at 15-16. Many of these paragraphs in fact do not deal with offensive conduct or statements by Shirley after November 2006, but some of them do. On the showing made, this argument does not entitle the defendant to summary judgment on the retaliation claim.

On the third element of the plaintiff's *prima facie* case, the defendant contends that the plaintiff cannot show that there is a causal connection between his complaints about Shirley and his termination because the plaintiff had a history of "belligerent and insubordinate behavior" in the workplace. Motion at 18-20. Such evidence does not negate the fact that the termination followed shortly after the plaintiff engaged in the allegedly protected activity. *See Oliver v.*

13

*Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988) (discharge soon after plaintiff engaged in protected activity is indirect proof of causal connection). Nothing in *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999), which the defendant characterizes as "aligned" with the facts of this case, Motion at 20, requires the court to disregard this proximity in this case. In that case, the plaintiff had failed to argue that the facts supported a reasonable belief on his part that the conduct of which he complained was a violation of any law, so the question of a temporal proximity was not reached. *Id*. at 262-63. Again, on the showing made, I conclude that the plaintiff's evidence, viewed in the light most favorable to him, would allow a reasonable factfinder to conclude that there was a causal connection between his complaints and his termination.

The analysis thus moves on to the defendant's expressed reason or reasons for the termination. The plaintiff concedes that the defendant "asserts an allegedly facially nondiscriminatory justification . . . by claiming [the plaintiff] was fired for insubordination for yelling too loudly at Dow about Shirley's harassment on December 20, 2006." Opposition at 17. This characterization of the defendant's position is too narrowly drawn. The defendant cites numerous instances of alleged misconduct by the plaintiff. Motion at 16-18.[7] In any event, the evidence on this point is disputed, but enough to move the analysis on to the third stage, in which the burden returns to the plaintiff to demonstrate that the defendant's assertion that incidents of insubordination were the reason for the termination is a pretext for unlawful retaliation.

The defendant does not address this third stage at all in its initial memorandum of law. The plaintiff relies largely on the affidavit of David to demonstrate that the defendant's proffered

---

[7] The motion discusses this evidence in the context of "determining whether conduct is protected opposition," Motion at 16, but the point of the discussion is more accurately described as a recitation of the defendant's reasons for terminating the plaintiff's employment. The memorandum of law contains no other discussion of this aspect of the *McDonnell Douglas* framework.

14

reasons for terminating him are pretextual. Opposition at 17-19. The defendant attacks some, but not all, of the cited paragraphs of the plaintiff's statement of material facts that are based on David's affidavit, Defendant's Responsive SMF ¶¶ 45, 65, 88-89; Reply at 6-7. Its objection to paragraphs 88-89 of the plaintiff's statement of material facts is well-taken: those paragraphs, which recite what happened to David after the plaintiff was terminated, do not provide relevant evidence with respect to whether the reasons given by the defendant for the plaintiff's termination are pretextual.

The defendant's objection to paragraph 45 is that it is not material to the question of whether it retaliated against the plaintiff for his complaints of sexual harassment. Defendant's Responsive SMF ¶ 45. But, a statement by Dow to David before the plaintiff was terminated that David would be transferred or fired if David complained "to corporate" about Shirley's actions is relevant to the plaintiff's claim, since it demonstrates Dow's willingness to fire another employee for doing what the plaintiff suggests that he did. *See* Plaintiff's SMF ¶ 45. The defendant denies that the plaintiff effectively complained "to corporate" before his termination, but that means only that there is a dispute of material fact between the parties.

This dispute carries over to the defendant's objection to paragraph 65 of the plaintiff's statement of material facts, in which the plaintiff asserts that Dow told David "that he would fire Mr. Curtis for going over his head with his complaints about Shirley." Plaintiff's SMF ¶ 65. The defendant "asks that [this paragraph] be stricken because it is completely contrary to the Plaintiff's own testimony as well as the testimony of every witness deposed." Defendant's SMF ¶ 65. I am unaware of any authority precluding a plaintiff from submitting sworn testimony merely because it is contrary to other sworn testimony. Indeed, it is the role of the summary

judgment process to determine whether material factual disputes remain between or among the parties. I will not strike the paragraph on this basis.

The defendant goes on to deny paragraph 65 because "[b]ased on [the plaintiff's] own testimony it would be impossible for Mr. Dow to have received a call from Mr. Sullivan or Mr. Funder regarding [the plaintiff's] complaints when, by [the plaintiff's] own testimony, he did not make any complaints about Keith Shirley to higher management until after he was terminated." *Id*. This is one way to interpret the plaintiff's deposition testimony, which is admittedly less than clear, but it is certainly not the only way.

The defendant cites paragraphs 122-30 of its statement of material facts in support of its assertion that the plaintiff "never made any complaints to higher management . . . until after he was terminated." Reply at 6. The plaintiff denies paragraph 129 and qualifies paragraphs 126, 128, and 130. Plaintiff's Responsive SMF ¶¶ 126, 128-30. It is clear from other paragraphs in the defendant's statement of material facts that Dow sent the plaintiff home on December 20, 2006, before he terminated the plaintiff's employment and before the plaintiff was told that he had been fired, on December 21 or 22, 2006. Defendant's SMF ¶¶ 107-08, 112-17. The plaintiff testified that he placed a telephone call to Sullivan on December 20 "from his cell phone on his ride home." *Id*. ¶ 124. He testified that he left a message for Sullivan with "the comments that I – all my problems." Plaintiff's Dep. at 154. He testified immediately thereafter that "I didn't leave it on the message but that's what I wanted to call and talk to him about, but I never did." *Id*. at 154-55. He did testify that he called Funder and left a message with "[a]ll my complaints of Keith Shirley" after he had been terminated, *id*., but he also testified that he left the message on December 20, and the summary judgment record demonstrates that the plaintiff did not know that he had been terminated until December 21 or 22. Thus, it is entirely possible that the

16

plaintiff communicated something about Shirley to Sullivan or Funder, or both, on December 20 before Dow made the alleged remark to David. Plaintiff's SMF ¶¶ 64-65.[8]

The defendant does not object to paragraph 66 of the plaintiff's statement of material facts, on which the plaintiff also relies. Opposition at 18. That paragraph asserts that Dow told the plaintiff "[t]he next time [he] went to work" after December 20 that "he was fired for complaining to Billy Sullivan and Wayne Funder." Plaintiff's SMF ¶ 66. The defendant denies this paragraph, but only on the same basis as that asserted for its denial of paragraph 65, that it would have been impossible for Dow to have learned from Sullivan or Funder that the plaintiff had called them to complain about Shirley before he fired the plaintiff. Defendant's Responsive SMF ¶ 66. In the case of this paragraph, that denial is not responsive, and paragraph 66 is accordingly deemed admitted, because it is supported by the citation given by the plaintiff to his own deposition. Plaintiff's Dep. at 144, 151. This paragraph, considered either alone or along with the evidence discussed above, is sufficient to allow a reasonable factfinder to conclude that the defendant's proffered reason for terminating the plaintiff's employment was a pretext and that the actual reason was retaliation for his complaints about Shirley. Nothing further is required.

The defendant is not entitled to summary judgment on Count II.

---

[8] This distinguishes the instant case from *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005), cited by the defendant. Reply at 6. In that case, the plaintiff asked the court considering the defendant's motion for summary judgment to credit parts of the defendant's testimony about the event giving rise to the action while adopting the plaintiff's contradictory description of the event. *Id*. at 1278 n.7. The court held that a court considering a motion for summary judgment must credit the nonmovant's version of events "when, as here, the nonmovant's testimony is not doubtlessly incredible[,]" rather than "pick and choose bits from other witnesses' essentially incompatible accounts." *Id*. at 1278 & n.7. The same analysis applies to *Sullivan v. City of Satsuma*, 2005 WL 2895983 (S.D. Ala. Oct. 28, 2005), the other case cited by the defendant in this regard, Reply at 6, in which the plaintiff sought to rely on evidence that contradicted his own sworn testimony, 2005 WL 2895983 at *3.

17

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED** as to Count I of the complaint and otherwise **DENIED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of August, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge